IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL RAMOS, | ) | CASE NO. 1:12 CV 2213 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is this action by Michael Ramos under 42 U.S.C. § 402 seeking

judicial review of the final decision of the Commissioner of Social Security denying Ramos's

applications for disability benefits and supplemental security income.[2] Under my initial

order,[3] the Commissioner has answered[4] and filed the administrative transcript,[5] and Ramos

has filed his fact sheet.[6] As directed in my procedural order,[7] the parties have briefed their

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge
Patricia Gaughan in a non-document order entered August 29, 2012.

[2] ECF # 1.

[3] ECF # 6.

[4] ECF # 11.

[5] ECF # 12.

[6] ECF # 13.

[7] ECF # 6.

positions[8] and filed supporting charts.[9] The parties have also participated in a telephonic oral argument.[10] For the reasons stated below, I will recommend finding that the decision of the Commissioner is, in part, not supported by substantial evidence and so should be reversed and the case remanded for further administrative proceedings.

## Facts

### 1.    Background

Ramos, who was born in 1983, cannot communicate in English and cannot read or write Spanish.[11] He attended both special education classes and standard classes while in high school, but withdrew before graduation.[12] Ramos has been in the United States since 1998[13] and now lives in an apartment with his wife and family.[14] Although the Administrative Law Judge ("ALJ") found that Ramos had "changed his story about his work history" so much

---

[8] ECF # 15 (Ramos's brief); ECF # 17 (Commissioner's brief); ECF # 18 (Ramos's reply brief).

[9] ECF # 16 (Ramos's supplemental fact tables); ECF # 17, Attachment (Commissioner's supplemental fact charts).

[10] ECF # 20.

[11] Transcript ("Tr.") at 31.

[12] *Id.* at 26.

[13] *Id.*

[14] *See*, *id*. at 220-22.

as to make it unreliable,[15] earning records show that he has been employed "with some consistency" through 2008,[16] with his past relevant work as a warehouse worker.[17]

**2.     Decision of the ALJ**

The found that Ramos has the following impairments, which are severe either singly or in combination, consisting of a schizoaffective disorder, a reported history of a seizure disorder, disc protrusion of the lumbar spine at L3-4 and L5-S1, residual effects of left knee injury, and illiteracy in both Spanish and English with a reported inability to communicate in English.[18]

After determining that Ramos did not meet the Listing for a seizure disorder, the ALJ further found that his mental impairments did not meet or equal Listings 12.03 and 12.04.[19] In regards to the conclusion that Ramos' impairments, either singly or in combination, do not meet or equal a Listing, the ALJ noted that all of the consulting sources who evaluated Ramos or his claim reached that same conclusion.[20]

The ALJ then made the following finding regarding Ramos's residual functional capacity ("RFC"):

_____

[15] *Id*. at 24.

[16] *Id*. at 25.

[17] *Id*. at 31.

[18] *Id.* at 25.

[19] *Id*. at 27.

[20] *Id*. at 28.

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 C.F.R. §404.1567(c) and 416.967(c) He is able to perform work that requires him to lift 50 pounds occasionally or 25 pounds frequently, to stand or walk for six hours of eight, or to sit for six hours of eight. He is able to perform work that does not require commercial driving, or exposure to hazards such as unprotected heights, uncovered industrial machinery, or objects that are hot or sharp against which he might fall. He is able to perform work that involves simple, routine, repetitive tasks with easily explainable changes for which the instructions can be given orally or by demonstration.[21]

After hearing testimony from a vocational expert ("VE"), the ALJ concluded that with his RFC Ramos could perform his past relevant work as a warehouse worker.[22] Also with the assistance of testimony from the VE, the ALJ made an alternative finding that Ramos with his RFC could perform the following jobs which exist in substantial numbers in the national economy: laundry laborer, hand packager, and housekeeping/cleaning.[23] Accordingly, Ramos was found not disabled.[24]

**3.     Issues on judicial review**

Ramos seeks reversal of the decision of the Commissioner raising the following issues for judicial review:

---

[21] *Id.* at 28.

[22] *Id*. at 31. The specific testimony from the VE was that Ramos could not perform the warehouse worker job as he actually used to do that job, but could perform the job as it is generally defined in the Dictionary of Occupational Titles (DOT).

[23] *Id.* at 32.

[24] *Id.* at 33.

- Dr. SMITH: Did the decision err (Finding 5, RFC) by failing to address the opinions of the agency's examining psychologist Smith, that the claimant had "extreme" limitation of social functioning and "severe" limitation in withstanding stress? (Tr. 328 (Dr. Smith reporting extreme impairment of relating to others, and severe impairments of understanding/remembering/following instructions and withstanding the stress and pressure of ordinary day-to-day work activity), 26 (ALJ misstating Dr. Smith's diagnosis of "moderate" mental retardation as "mild" mental retardation), 26 (ALJ giving little weight to CE's opinion of cognitive limitation preventing full-time work, but failing to address Smith's other opinions), 26 n. 1 (ALJ stating that BDD review psychologist believed Dr. Smith's findings were invalid, but not weighing BDD reviewer's opinion), 279 (presenting issue to AC).)

- SOCIAL FUNCTIONING: Did the decision err (Finding 5) by endorsing "moderate" limitations in social functioning, but failing to reflect any social limitations in the RFC? (Tr. 27 ("moderate" social limitations in listings B-criteria), 28 (RFC finding).)

- HYPOTHETICAL QUESTION OMITTED FINDING ABOUT HAZARDS: Did the decision err at step four (Finding 10) by finding that claimant could perform her past work as generally done, relying on a vocational expert's answer to the first hypothetical question, which did not contain the limitations against hazards that the ALJ found? (Tr. 31 (step four finding), 55-56 (VE testimony on hypothetical without hazards limitation), 28 (RFC finding including hazards limitation), 61 (VE testimony on second hypothetical question, which contained the limitations against hazards), 276 (presenting this issue to Appeals Council).)

- UNABLE TO COMMUNICATE IN ENGLISH: Did the decision err in its alternative step-five denial (Finding 11) by finding that the claimant could perform the occupations named by the VE, yet inconsistently finding that the claimant is unable to communicate in English and cannot read or write in English, and the VE had no idea how many of those jobs had a supervisor who could speak claimant's language? (Tr. 32 (finding able to perform jobs), 31 (finding unable to communicate in English), 62-63 (VE testifying no idea how many of those jobs would have a Spanish-speaking supervisor), 447 (presenting this issue to ALJ post-hearing), 277 (presenting this issue to AC).)

-5-

- INCONSISTENT WITH DOT: Did the ALJ violate SSR 00-4p (Finding 11) by failing to obtain a reasonable explanation for the conflict between the English language levels for the named occupations in the DOT and the VE's initial testimony that the occupations could be performed without those English language levels? (Tr. 31 (finding unable to communicate in English), 62-63 (VE testifying no idea how many of those jobs would have a Spanish-speaking supervisor), 276 (presenting these issues to AC).)

- FULL-TIME JOBS: Did the decision err by relying on a number of jobs that included an unknown number of irrelevant part-time jobs? (Tr. 60 (VE conceding that incidence figures included unknown number of part-time jobs), 278 (presenting issue to AC).)

- IQ TESTING: Did the ALJ err by failing to order IQ testing? (Tr. 327 (CE Smith suggesting "moderate mental retardation" without testing), 253 (requesting ALJ to order testing), 280 (presenting issue to AC).)[25]

## Analysis

### 1. Standard of review – substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[25] ECF # 13 at 2-3.

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[26]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[27] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[28]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    Application of standard – the decision of the Commissioner is not supported by substantial evidence and so should be reversed.**

**A.    Treatment of consulting psychologists's opinion**

Ramos argues that the ALJ failed to properly address the opinion of state agency consulting examining psychologist, Dr. Gene Smith.[29] He further argues in his reply brief that the Commissioner's explanations for what the ALJ did concerning Dr. Smith is impermissible *post hoc* rationalization.[30]

---

[26] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[27] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[28] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[29] ECF # 15 at 2-3.

[30] ECF # 18 at 1.

I note first that Ramos and the Commissioner agree that the regulations require an evaluation of every medical opinion and a statement of reasons if a medical opinion is not adopted.[31] Here, the ALJ specifically assigned "little weight" to the opinion of Dr. Smith, stating that his opinion was inconsistent with the mental assessment made by treating social workers at the Nord Mental Health Center, which assessments were "endorsed" by Nord Center psychiatrist Enrique Huerta, M.D.[32] Ramos claims that the problem with the ALJ's treatment of Dr. Smith is that the ALJ made the "little weight" assignment only as to "Dr. Smith's opinion about [Ramos's] cognitive limitation preventing full time work," but "failed to address Dr. Smith's other opinions about relating to others, remembering and following instructions, and withstanding ordinary stressors."[33]

In fact, a fair reading of the ALJ's commentary in this section shows that the analysis of Dr. Smith's opinion is immediately preceded by a detailed discussion of Ramos's treatment at the Nord Center. There, the ALJ notes that Ramos was diagnosed with schizoaffective disorder and assigned a GAF score of 55, which, the ALJ stated, "indicated moderate symptoms."[34] The ALJ further notes that this diagnosis and the supporting findings were then "endorsed" by Nord Center psychiatrist Enrique Huerta, M.D.[35]

---

[31] *See*, ECF # 15 at 2; ECF # 17 at 13.

[32] Tr. at 25.

[33] ECF # 15 at 2.

[34] Tr. at 25.

[35] *Id*.

The ALJ then immediately takes up Dr. Smith and his opinion that Ramos "is so cognitively limited that he is incapable of full time employment, even going so far as to diagnose [Ramos] with mild retardation."[36] This opinion, the ALJ concluded, "is entitled to little weight because this finding is inconsistent with the remaining medical evidence including assessments by treating social workers and psychiatrist Dr. Huerta and the Nord Center."[37]

As the Commissioner observes, the opinion of Dr. Smith being given little weight is essentially the opinion that Ramos is incapable of full-time work – an opinion that necessarily reflects Dr. Smith's view of the extent of all functional limitations, whether or not rooted in a cognitive impairment. That understanding is reinforced by the ALJ's note that one reason for affording Dr. Smith's opinion little weight was that it is inconsistent with the assessment of the Nord Center social worker, cited by the ALJ, who determined that Ramos had a GAF score of 55. GAF, or global assessment of functioning, is a measurement of exactly what Ramos now claims the ALJ neglected to consider – such things as an ability to relate to others, to withstand stress, and the "pressure of ordinary work activity."[38]

Thus, to the extent Dr. Smith's opinion that Ramos was not capable of full-time employment was in part because Dr. Smith believed Ramos was impaired in certain functional areas, the above evidence shows that the ALJ considered and minimized the

---

[36] *Id*. at 26.

[37] *Id*.

[38] *See*, ECF # 17 at 13.

-9-

weight of that opinion by specifically pointing to the contrasting GAF score given by the Nord Center social worker and then "endorsed" by a Nord Center psychiatrist. That GAF score, which is one of the cited reasons for discounting Dr. Smith's opinion, is evidence that the ALJ fully considered the total scope of Dr. Smith's opinion, and further evidence that Ramos's functional problems were merely moderate and did not rise to the level of precluding full-time employment.[39] As such, this constitutes a "good reason" for assigning only little weight to Dr. Smith's opinion, and such reason is capable of meaningful judicial review by this Court.[40]

Accordingly, I recommend finding that in this regard the decision of the Commissioner is supported by substantial evidence and so should be affirmed.

## B.  Limitations on social functioning

Ramos maintains that because the ALJ found moderate social limitations, the RFC should have contained such a limitation.[41] He argues that the mental limitation in the RFC – restricting Ramos to work "that involves simple, routine, repetitive tasks with easily

---

[39] As the prior discussion of the ALJ's actual opinion illustrates, the explanation of the reason for giving little weight was given directly by the ALJ and so is not a "*post hoc* rationalization" by the Commissioner, as alleged by Ramos. *See*, ECF # 18 at 2.

[40] I also note that the ALJ's footnote concerning Dr. Vicki Casterline's misgivings about Dr. Smith's opinion and her conclusion that "[Ramos] appeared to be intentionally trying to appear impaired," is additional support from a reviewing source for the decision to discount Dr. Smith's opinion. *See*, Tr. at 26 n.1. It should further be noted that the ALJ carefully did not rely on this opinion as a primary reason for discounting Dr. Smith's opinion, but rather included the reference only in a footnote as additional support for the reasons given in the body of the opinion.

[41] ECF # 18 at 2.

explainable changes for which the instructions can be given orally or by demonstration" – actually would increase the need for workplace interaction and so is incompatible with the finding of moderate social limitations.[42] He also argues that the hypothetical question posed to the VE, which asked the VE to assume that a worker was limited to no more than occasional and superficial contact with the public," should have been adopted into the RFC.[43]

The ALJ, in the discussion regarding the RFC, specifically references the prior evidence showing that Ramos's mental problems include "a sensitivity to stress and difficulty relating to others" and that the state reviewing "mental health experts have essentially agreed that [Ramos] has at least moderate limitations" imposed by this mental impairment.[44] The ALJ then stated that she incorporated that evidence and those opinions into the RFC finding of limiting work to that which is "simple and routine."[45] The ALJ also observed in this regard that Ramos was able to maintain "relationships with his family, his wife, and children," and is competent to make his own decisions and recall his own history.[46] Further, the ALJ pointed out that "the record does not contain any opinions from treating physicians indicating that

---

[42] ECF # 15 at 3.

[43] ECF # 18 at 2-3.

[44] Tr. at 29.

[45] *Id*.

[46] *Id*. at 30.

the claimant is disabled or even has limitations greater than those determined in this decision."[47]

It is clear in the regulations that the determination of a claimant's RFC is reserved to the Commissioner.[48] That decision must be supported by substantial evidence.[49] Hypotheticals in the questions to the VE must be supported by some evidence of record[50] and accurately describe the claimant.[51]

Here, the RFC, as noted, does not include the social limitation that was explicitly referred to by the ALJ – a sensitivity to stress and to dealing with others. While one hypothetical question to the VE included a limitation as to having "only occasional and superficial contact with the public,"[52] that limitation is not as extensive as the limitation of being sensitive to stress and to dealing with others – a category that includes members of the public, but also includes co-workers and supervisors. As such, the RFC, even as modified by the hypothetical, does not accurately describe Ramos.

_____

[47] *Id.*

[48] 20 C.F.R. §§ 404.1527(e), 416.927(e).

[49] *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981).

[50] *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987).

[51] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[52] Tr. at 55.

Thus, I recommend finding that the decision of the Commissioner here is not supported by substantial evidence and so should be reversed.

**C.     Workplace hazards**

Ramos contends here that the absence of the workplace hazards limitation of the RFC from the step four inquiry concerning whether Ramos could do his past relevant work as a warehouse worker invalidates the conclusion that he could to such work.[53] The Commissioner essentially agrees but maintains that the ALJ's alternative step five finding that Ramos could perform other jobs and so is not disabled was properly made.[54]

Because I will recommend below that one of the two issues raised by Ramos specifically addressed to the step five finding does require reversal of the Commissioner's decision, I here recommend finding that the decision of the Commissioner at step four is not supported by substantial evidence, and that a step four inquiry based on a proper hypothetical question be undertaken on remand.

**D.     Step five issues**

Ramos raises two issues concerning the step five finding that there are a significant number of jobs he can perform with his RFC and vocational profile: (1) the VE erred in including the jobs he did when he did not know how many would have a Spanish-speaking

---

[53] ECF # 15 at 4.

[54] ECF # 17 at 16 n.5.

-13-

supervisor capable of giving Ramos instructions;[55] and (2) the jobs listed at step five contain an unknown portion of part-time jobs, which may not be included.[56]

As to the initial issue regarding the availability of Spanish-speaking supervisors, the Commissioner acknowledges, as she must, that the VE could not specify how many positions would provide a Spanish-speaking supervisor capable of giving Ramos directions in that language.[57] Moreover, as Ramos observes, the VE was also unable to clarify what number of jobs identified could be performed solely on the basis of non-verbal signs. If, as the Commissioner appears to suggest, most of the identified jobs are capable of being performed without the need for any verbal English-language communication between the employer and his supervisor, that must be clearly established by the VE. At present, I recommend finding that the decision of the Commissioner on this specific point is not supported by substantial evidence.

As to the issue regarding the inclusion of part-time positions, the Seventh Circuit, and at least one district court in this circuit, have rejected Ramos's argument that, consistent with Social Security Ruling 96-8p, a VE must identify which jobs he states match the RFC are

---

[55] ECF # 15 at 5.

[56] *Id.* at 6.

[57] Indeed, the VE testified that while he "would hope" there would be a Spanish speaker around to give Ramos instructions about the job he was to do, he also didn't have any idea how many of the identified jobs would actually have such a person available. Tr. at 62-63.

-14-

full-time and which are part-time.[58] The Seventh Circuit in *Liskowitz v. Astrue* found that Ruling 96-8p applies only to the ALJ's RFC finding, which must be based on the claimant's capacity to perform full-time work.[59] As the district court stated in *Miller v. Astrue*, "to say that the ALJ may deny benefits only if her finds the claimant capable of some form of full-time work is quite different from saying that only full-time jobs can constitute significant work in the national economy."[60]

Recently, Judge Lioi in *Janda v. Commissioner of Social Security*[61] essentially agreed with the reasoning of the cases cited above that the claimant's reasoning concerning a requirement for differentiating full from part-time work in the job base at step five "is based upon a misinterpretation of Social Security Ruling 96-8p."[62] After noting that the cases cited by the claimant there, who was represented by the same attorney as now represents Ramos, do not support the proposition that an ALJ must ask a VE if his testimony refers to full-time or part-time work, Judge Lioi "decline[d] to find that it was *per se* error for the ALJ to accept

---

[58] *Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009); *Miller v. Astrue*, No. 09-50-ART, 2009 WL 3566649, at *4 (E.D. Ky. Oct. 27, 2009).

[59] *Liskowitz,* 559 F.3d at 745.

[60] *Miller*, 2009 WL 3566649 at *4 (citing *Liskowitz*).

[61] *Janda v. Comm'r of Soc. Sec.*, No. 1:12CV1250, 2013 WL 3200611 (N.D. Ohio June 24, 2013).

[62] *Id*., at *7.

-15-

the VE's testimony despite his inability to definitively state whether his job incidence figures included part-time employment."[63]

While recommending that *Janda* be found to generally state the applicable law, I remain troubled that the specific source here for the available jobs is the Occupational Employment Quarterly (OEQ), which the VE testified includes both full-time and part-time jobs.[64] Yet, the VE also testified that there was "no way of telling" which of those aggregated jobs were part-time.[65] As Ramos observes, where the jobs involved are unskilled, as here, work that is less than full-time "may not result in earnings that constitute substantial gainful activity (SGA)," which is the test for disability.[66]

On remand, and as noted above, although case authority does not require a VE to distinguish the percentage of part-time jobs within the overall job base, an awareness of the concerns discussed above might prompt the VE to discern whether other sources exist that would permit a more accurate answer to the question regarding the percentage of full and part-time work available to an unskilled worker.

---

[63] *Id*.

[64] Tr. at 59-60.

[65] *Id*. at 60.

[66] ECF # 18 at 4.

-16-

### E.    IQ test

As a final issue, Ramos contends that the ALJ erred in not ordering an IQ test.[67] He argues that because Dr. Smith's opinion suggested that Ramos has "moderate mental retardation," and because he requested such a test, the ALJ should have ordered the test as reasonably necessary for a full adjudication.[68]

It is the claimant that has the initial burden of providing the agency with medical reports supporting his disability claim.[69] The ALJ is not required to order a consultative examination at government expense unless such an examination is "necessary" to allow the ALJ to make a disability determination.[70] In that regard, where substantial evidence supports a finding that a claimant does not have the restrictions on adaptive functioning as would meet or medically equal the listed impairment for mental retardation, it is not error for the ALJ to refuse a claimant's request for an IQ test.[71]

In this case, the ALJ found that Ramos did not meet or medically equal the listing for mental retardation.[72] In arriving at that decision, the ALJ found that the evidence of record,

---

[67] ECF # 15 at 7.

[68] *Id.*

[69] *See*, 20 CFR § 404.1593; *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

[70] *Landsaw*, 803 F.2d at 214.

[71] *Carrico v. Comm'r of Soc. Sec.*, No. 5:09 CV 2083, 2011 WL 646843, at *11 (N.D. Ohio Jan. 21, 2011) (citation omitted).

[72] Tr. at 27.

recounted earlier, such as the GAF score, is that Ramos has only moderate limitations in adaptive functioning.[73] Moreover, the only source that even suggested a diagnosis of mild retardation was Dr. Smith, whose opinion, as noted, was assigned little weight.[74]

Consequently, I recommend finding that the decision of the Commissioner on this point is supported by substantial evidence.

## Conclusion

For the foregoing reasons, I recommend finding that the decision of the Commissioner is, in part, not supported by substantial evidence, and that the matter should be remanded for the limited purpose of re-addressing the specific issues raised here.

Dated: July 23, 2013                                    s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[75]

---

[73] *Id.* at 25-26.

[74] *Id*. at 26.

[75] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-18-